Good morning, Your Honors. Please be seated. This case presents the issue of whether Mr. Pimentel-Lopez could have an order reinstated against him when the underlying proceedings amounted to a complete denial of his due process rights. Mr. Pimentel-Lopez is a native and citizen of Mexico. He was born in 1980 and he initially entered the United States in 1998 without inspection. He was issued a Notice of Appearance by the Department of Homeland Security in August of 1998 and that was served upon him. Now, the initial Notice of Appearance did not have a date or time set for his immigration hearing. The Executive Office of Immigration Review subsequently issued two Notices of Hearing, which were supposed to advise... So let me ask you two questions that give you some concerns about your position here. Yes, Your Honor. So they understand that we're dealing with a reinstatement order, is that correct? That's correct, Your Honor. And we have jurisdiction to review a reinstatement order, but the scope and extent of our review is limited, correct? That's true, Your Honor. Well, look at the three critical factors that the immigration officer used to issue the reinstatement order, right? Your Honor, there is also a narrow circumstances in which the underlying removal order can be collaterally attacked, and that would be under circumstances where the underlying proceedings amounted to a due process violation, which was gross miscarriage of justice. And that's under Envarsidad de Recon versus DHS. So your position is that you would have to show that it was a gross miscarriage of justice in order for us to review that question, correct? That's correct, Your Honor. And the claim here is that in that original proceeding, she didn't get notice. She did not receive notice. That's correct. She didn't receive notice of any of the immigration hearing. But we don't have any of the records here, the official records from the PIA. We don't know. There's no evidentiary records. Well, the reason we can surmise it is that neither of the notices do much good for you. Right. Well, the problem in this circumstance is that she was never given a hearing where he could have created an evidentiary record, and that is the circumstance. Why didn't you file a motion to reopen? Well, the reason why we couldn't file a motion to reopen is that it's barred under AUSC Section 1230. Or in subsection A5, which states that a motion has been reinstated against a groomed immigrant. See what I mean? Reopened. Yeah. So let me see if I've got these dates right. He was given a notice to appear to the percentage of the immigration court on February 4th, 1999. That was when he was supposed to appear. What? That's correct, Your Honor. That's not significant, that motion, that notice. Correct. He was removed, is it, eight days later on February 12th. Yes, Your Honor. He had until March 4th, 1999, to raise the issue of lack of notice. See now? That's 30 days. That was the final order of removal. That's the one that ordered him removed. Well, that has to be a statement. But the order of removal, the order to remove, was appeared on February 4th, 1999. He had 30 days in which to appeal that order. And he suddenly learned that something was up because he was physically removed. Oh, okay. I understand, Your Honor. Yes, he was removed on February 12th, 2000. Let me take a look at that. He had until March 4th to challenge that lack of notice. Unfortunately, he did not because at that time, the law was such that once he was removed, he was barred by the general rule stating that once you're removed, you no longer have jurisdiction in the immigration court to bring a person to reopen. And there's also a case that states that bringing a person to reopen is the sole means of challenging an in absentia order. And what's your authority for that meeting? Which one? The one where you said there's no jurisdiction to challenge when you've been removed. Oh, there's a bunch of cases that hold that, but they're collected in the case, known as Nolasco, and it's an INA case from 2009. In that case, I actually carved out an exception for in absentia orders, but it was not in effect at the time that Mr. Pimentel-Lopez was removed in 1998. So the other problem with the underlying proceedings beyond simply the notice of hearing, which Mr. Pimentel-Lopez received, is that the order also failed to state the exact grounds on which he was removed. They corrected it. They did correct it, Your Honor, although... In 2013. In 2013, that's correct, Your Honor, but Mr. Pimentel-Lopez was not served with the notice of the motion to, or he wasn't served correctly by the department with the notice of the motion to amend the original judgment or order. And so Mr. Pimentel-Lopez's position is that that correction should not be toted against him since he also didn't receive notice, proper notice, to challenge that reopening of that issue. It would have opposed it amending the order on the grounds that he didn't receive notice originally of the proceedings that resulted in that order being launched against him. So, as we just discussed, he was removed on February 12, 1999, only eight days later, and he reentered the United States shortly thereafter. He was eventually detained in 2013 on a death charge, which was later dismissed. After he was originally removed, he's now spent over 10 years in the United States. His wife was a Bosnian refugee and a daughter who was about 10 years old, and there are substantial equities allowing him to remain in the United States. And, in fact, if proceedings were reopened, he would be eligible for cancellation or removal for certain non-permanent residence, as his family would experience his fate. Is the government entertaining him in any sort of way? Your Honor, while... These days? Excuse me? These days, is the government entertaining him? Well, it's actually the Executive Office of Immigration Review would have authority over it, and Immigration Judges do grant it. So it's under... Right, like trying to work out some sort of settlement. So we did consult for Mr. Pimentel-Lopez. We sought to get a push. ICE requested the case be reopened because of the issues we've noticed, and ICE stated that they would not join in the motion to reopen the proceedings, which would have been a way to potentially get around the bars, substory bars to reopening the proceedings. Do you want to say something for me, by the way? Yes, Your Honor. Thank you. May it please the Court of Magnitude, on behalf of the government, the Sheriff's filed a petition for review of a reinstatement order that reinstates a previous executed order of removal, but he does not raise any challenge to that reinstatement order. Instead, he invites the Court to review its underlying order of removal, but we do have jurisdiction to review that petition. You do have jurisdiction to review the reinstatement order, of course. Right. Correct. But he does not obtain review of the underlying order that was entered 18 years ago. What do you do with our case? That case recognizes... I think I mispronounced the case name. That case did not deal with the 30-day time limit for the underlying order, but it recognized that this Court has always held that there was a gross and scary injustice exception, perhaps. But it doesn't seem to say that very directly. Well, it does say that very directly, but it didn't actually find that in that case. And I'm unaware of any case where this Court has actually found that gross and scary injustice. It doesn't seem to recognize it. Right. Absolutely. But this is in that case. Suppose this record demonstrated that the petitioner did not actually receive notice. Yes. In the underlying proceeding. Then he should file a motion to not open it. No. See, I'm just confused. Okay. Here we have this declaration that he files in our Court, and it's actually what he does. He changes it. Right. But let's suppose that it was in the record. Or somehow, you know, maybe if you go to the letter or something, that it demonstrates or documents that he didn't actually receive notice of the original removal proceedings. Would that amount to a gross or a scary injustice? Perhaps. But I would suggest simply that in order for that to be in the record, he should have phrased it and exhausted it. Okay. I'm just curious. I'm just asking you whether that situation would amount to a gross or a scary injustice. That's all I'm asking. If he had no notice? No notice. I know it's painful to hear that sort of sad notion of fairness and due process. I'm not aware of any case law that holds that, but I would suggest I would understand that that could. Could. Well, it's a breach. Could. Oh, absolutely. Absolutely. You know, it wouldn't be fair that he didn't have notice of his hearing. Are the weeks already moved? We have a record here that doesn't demonstrate that. We don't have a record that demonstrates that. And, in fact, his record, if he attends to his brief, is basically, in essence, what he would file in a motion to reopen and rescind an interim sentence order before the agency, which he should have done. And that's the only avenue of relief for him here. He can't erase that with this order. He filed a motion to reopen. No, I don't believe he has ever filed a motion to reopen with the If he could. Well, if he could, would the hearing be needed? I believe so, yes. Or would they say it's automatically? No, I don't believe they would. Because, A, the statute says that if your motion to reopen is based on a lack of notice, you can erase it at any time. Any time. B, or, secondly, the board has held in Bolton East, in the last vote in 2009, they recognized that there's no departure bar or any other bar for inabstantial orders based on a lack of notice. Because the board held that if you didn't get notice of your hearing, the original removal order is a nullity in itself. So you don't agree with your blended friend that he couldn't have appealed the order of removal on February 4th, 1999 in 30 days? I would say that he could have filed a petitioner's review within 30 days, but the government would have said that he hadn't exhausted his administrative remedies. My only avenue for him to challenge an inabstantial order is to file a immigration judge himself. Do you agree or do you not agree with your opponent that if he, out of the country, hadn't been removed, this court lacks jurisdiction? I don't believe that. His removal doesn't affect this court's jurisdiction. Does the removal affect the immigration court's jurisdiction? No. Not if the motion to reopen is based on a lack of notice. And the board has recognized that, at least since 2009, and that he could have raised that argument, even if it's worth a good shot, a minimum shot. Absolutely. And, in fact, if he had filed the evidence that he's put before this court with the immigration judge, you know, I don't know. And the government hasn't had an opportunity to respond to that, and there hasn't been any finding or record developed where we can agree with him that that rule allowing a motion to reopen for lack of notice of the original immigration hearing did not exist prior to 2009. I don't agree. I don't think the board was the board in Boneless, in Alaska, was basically stating the law, you know. I don't think they were making a change in law or overturning a prior understanding. They were simply stating the law as it is and how it has been. And I think the court made a reasonable conclusion that, you know, if he had never had notice, his original removal order was a nullity to begin with because it denied him the opportunity to appear and contest his removal. I want to remind the court of its decision in Morales v. Quierdo, which seems to control this case almost identically, because in Morales v. Quierdo, it was a reinstatement order. The alien in that case argued that he didn't have notice of his underlying removal order that was reinstated. And this court held that there was or denied that issue for review because they held that the alien should not be permitted to gain a right or privilege by illegally reentering the country. And, in fact, that any due process concerns were alleviated by the fact that a reinstatement doesn't impose any new civil or criminal penalty on the alien. It then comes out that in Morales v. Quierdo, the court also said that we left open the possibility that individual petitioners may raise procedural defects in their particular cases. Is it correct to note it's not a procedural defect? It was in that case. It was not in that case. And I think your position is it was not in that case. No, I think that actually the petitioner in Morales v. Quierdo didn't complain of a lack of notice. I think we're on the same line. He did complain, the court considered it, and the court denied it. Fair enough. But the bottom line is that the court recognized that the reinstatement isn't an opportunity to give the alien a chance to go back whatever the due process concerns he raised. Morales v. Quierdo didn't deal with the 1252. This is very A5 detail. The A2D, the Constitutional Question of Law. You didn't address that. You have what we recognized in Garcia that you recall. That's true. But A2D doesn't alleviate the 30-day time limit. It's also in 1252. That's the case, as we said, in our brief third circuit, the 10th circuit, the 11th circuit, the fourth circuit, is now held. We recognize that A2D doesn't alleviate the 30-day time limit in 1252-B1. I went to one or two of those cases, but I don't recall that they actually held in those circuits a case similar to Garcia v. Rincon. Right. But on the other hand, the exhaustion requirement is what I would come back to, which is in 1252-B1, which requires end-to-exhaustive administrative remedies. And the board has made clear that the sole and exclusive means of challenging in an abstention order based on lack of notice is through a motion to reopen with the immigration judge. And that would, you know, permit him to develop a record and give the agency a chance to correct some mistakes. So for credential reasons and for everything else, he's inviting this court to rule on a motion to open. He's a fan of evidence here, which you should reject his invitation to engage in fact-finding and deny the petition to reopen. Thank you, counsel. I just want to address a couple of issues raised by Boise Council. The first is that the motion to reopen is speculation that a court would find that in a case of an abstention order, the prohibition on attacking the underlying removal order is barred with a motion to reopen under APUSC subsection 1231A5 will be waived, with no indication that that's the case. The other problem with a motion to reopen. So the government says that sounds like you'd be well served to at least try to file a motion to reopen. Well, the other issue is it's true that it is possible. Well, I don't believe that a court would find. Don't be so hesitant. I mean, go forward and make your best argument. You'll get the shot. Well, so the problems are, first of all, it's not clear that the immigration court has jurisdiction. The other problem is that a motion to reopen is a discretionary decision. No harm in asking. Well, there is a harm to the petitioner, which is that he has to go through the expense of, you know, preparing this motion to reopen with the immigration court and his family. It does represent a hardship for him to have to go through this extra proceedings when there's no really indication that there's jurisdiction in the immigration court or that the immigration court would exercise discretion in granting such a motion. And I don't think that a remedy where it's not clear that there's jurisdiction is specific. Do you think that proceeding this matter all the way to the Ninth Circuit is more efficient than repeating this trial? Well, it's more efficient than starting with the immigration court, going to the BIA, and then going to the Ninth Circuit before there is judicial review of due process and constitutional claims in the underlying proceedings. Isn't there pretty fundamental rules that apply to what we could actually consider in the Ninth Circuit? That's true. And one of the rules is that in a case under 1252A2D, the Ninth Circuit has jurisdiction. And so what does that mean? The administrative record. In terms of the administrative record. With the administrative record, I understand that there's not as much in it as we would like, but there's nothing that doesn't. Right. Isn't that true? Well, if you just include the record of the unanimous statement, Harry, that is correct. But if you include the record as including the proceedings in the underlying removal order, then there's enough to raise questions as to whether Mr. Humantel has ever received any notice of the underlying removal order. Okay. Thank you. Thank you. Thank you.
judges: Paez, Bea, Lamberth